## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| BRYANT LANDRY | CIVIL ACTION NO. 16-0691 |
| VERSUS | UNASSIGNED DISTRICT JUDGE |
| LOWE'S HOME CENTERS, LLC | MAGISTRATE JUDGE WHITEHURST |

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (Record Document 19) filed by Defendant Lowe's Home Centers, LLC ("Lowe's"), whereby Lowe's seeks dismissal with prejudice of Plaintiff Bryant Landry's ("Landry") lawsuit, arguing Landry cannot meet the second and third elements of a *prima facie* case for injury caused by falling merchandise. See Record Document 19 at 1. Landry opposes the motion. See Record Document 21. Because the Court finds Landry has shown genuine issues of material fact exist with regard to the second and third elements, Lowe's motion is **DENIED**.

### BACKGROUND

On July 27, 2015, Landry and his co-workers, Johnny Louviere and Robert Lewis, went to a Lowe's store in New Iberia, Louisiana, to purchase materials for a shed they were to build for a customer. Landry alleges that while he was standing next to a shelved stack of two-by-four lumber and reviewing his shopping list, multiple pieces of the lumber fell off of the shelf and onto him, causing him to fall to the ground and incur injuries. See Record Document 21, p. 1. Landry contends neither he nor his companions touched the lumber before it fell. See id. He further contends no other customers or employees were on the aisle when the incident occurred. See Record Document 21 at 5; Record Document 21-2 at 9.

On January 29, 2016, Landry sued Lowe's in state court, seeking to recover for physical pain and suffering, mental anguish, loss of earnings and earning capacity, and medical expenses. See Record Document 1-1 at 2-3. On May 5, 2016, Lowe's removed the lawsuit to this Court, based upon diversity of citizenship. See Record Document 1. Landry contends Lowe's negligence caused the incident, arguing the lumber was stacked in an unsafe manner, thereby presenting an unreasonable risk of harm. See Record Document 21 at 6, 8. Lowe's now seeks summary judgment in its favor, arguing Landry cannot meet the second and third elements of his *prima facie* claim, which require him to show another customer did not cause the merchandise to fall and the defendant's negligence was the cause of the accident. See Record Document 19 at 1.

**LAW AND ANALYSIS**

**I.  Summary Judgment Standard**

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed.R.Civ.P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." Quality Infusion Care, Inc. v. Health Care Service Corp., 628 F.3d 725, 728 (5th Cir. 2010). As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment

proof that there is an issue of material fact warranting trial.
Lindsey v. Sears Roebuck and Co., 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir.2001); see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen., 730 F.3d 450, 452 (5th Cir. 2013)(court must view all facts and evidence in the light most favorable to the non-moving party). "Credibility determinations are not part of the summary judgment analysis." Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist., 308 F.3d 451, 458 (5th Cir. 2002). Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004)(alterations in original) (quoting Celotex v. Catrett, 477 U.S. 317, 322 (1986)).

## II. Applicable Law - Merchant Liability

A merchant's duty to protect customers from injury caused by falling merchandise is set forth in Louisiana Revised Statute 9:2800.6(A).[1] See Carr v. Wal-Mart Stores, Inc., 312 F.3d 667, 670 (5th Cir. 2002). The statute reads:

---

[1]The heightened burden set forth in La. R.S. 9:2800.6(B) (Louisiana's "slip and fall" statute) does not apply in "falling merchandise" cases. Davis v. Wal-Mart Stores, Inc., 00-445 (La. 11/28/00), 774 So.2d 84, 90.

> A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

La. R.S. 9:2800.6(A). Louisiana courts have held the merchant's duty encompasses the responsibility on the part of store employees to place merchandise safely on shelves such that the merchandise will not fall, to safely replace merchandise that has been moved, and to check shelves periodically to ensure merchandise is in a safe position. See Smith v. Toys "R" Us, Inc., 98-2085 (La. 11/30/00), 754 So.2d 209, 215; see also Carr, 312 F.3d at 670.

A plaintiff injured by falling merchandise must present, by direct or circumstantial evidence, a *prima facie* case that a premises hazard existed by demonstrating:

> (1) he or she did not cause the merchandise to fall, (2) that another customer in the aisle at that moment did not cause the merchandise to fall, *and* (3) that the merchant's negligence was the cause of the accident: the customer must show that either a store employee or another customer placed the merchandise in an unsafe position on the shelf or otherwise caused the merchandise to be in such a precarious position that eventually, it does fall. Only when the customer has negated the first two possibilities *and* demonstrated the last will he or she have proved the existence of an "unreasonably dangerous" condition on the merchant's premises.

Davis v. Wal-Mart Stores, Inc., 00-445 (La. 11/28/00), 774 So.2d 84, 90 (emphasis in original). "Once a plaintiff proves a prima facie premise hazard, the defendant has the burden to exculpate itself from fault by showing that it used reasonable care to avoid such hazards by means such as periodic clean up and inspection procedures." Id.

III.   Analysis

   A.   **A Factual Issue Exists with Regard to Whether Another Customer Caused the Merchandise to Fall**

Lowe's contends Landry cannot meet the second element of his *prima facie* claim, because "he cannot negate the possibility that another customer caused the lumber to fall." Record Document 19-1 at 1. In support, Lowe's asserts both Landry and Johnny Louviere "testified that multiple other customers were shopping and retrieving lumbar [sic] from the same shelf that Landry claims lumber fell from and struck him." Id. at 4. Lowe's continues:

> Landry testified that other customers were handling the lumbar [sic] immediately before it fell. By his own admissions, Landry cannot eliminate the possibility that other customers caused the merchandise to fall. In addition to his own testimonial admissions, the only eyewitness, Johnny Louviere, testified that he could not rule out that the other customers caused the lumber to fall. Therefore, . . . Landry cannot satisfy his burden of proof under the Louisiana Merchant Liability Act.

Id. at 6.

In opposition, Landry correctly points out Lowe's has omitted a key clause of the second element of the *prima facie* burden in a "falling merchandise" case. Record Document 21 at 4. Whereas Lowe's sets forth the second element as, "[a]nother customer in the aisle did not cause the merchandise to fall," the full language of Davis actually reads, "another customer in the aisle *at that moment* did not cause the merchandise to fall." Id. (emphasis in original) (citing Record Document 19-1 at 4; quoting Davis, 774 So.2d at 90). According to Landry:

> "***At that moment***" is a key part of the requirement that Defendant omits from its memorandum. Mr. Louviere and Mr. Lewis were the only customers on the aisle with Mr. Landry ***at that moment*** that could have caused the lumbar [sic] to fall. The deposition testimony supports the fact that neither gentlemen [sic] caused the lumber to fall. Particularly, Mr. Lewis stated that

> he was a few feet away from Mr. Landry and Mr. Louviere when the lumber fell and therefore he did not touch it. . . .
>
> . . . Defendant points to the deposition testimony of Mr. Landry and Mr. Louviere but neither's testimony confirm [sic] that there were other customers on the aisle *at that moment* which caused the lumber to fall on Mr. Landry. At best, the testimony shows there were customers on the aisle at an earlier time before the fall, but were not there *at that moment* to cause the lumber to fall. Additionally, there are questions regarding the exact location the customers where [sic] shopping earlier.

Id. at 4-5 (emphasis in original).

The Court finds Landry has pointed to evidence in the record showing a genuine dispute exists as to whether another customer caused the lumber to fall. First, the Court notes that in support of its argument Lowe's "cherry-picks" incomplete portions of the testimonial evidence and ignores testimony undermining its position. For example, Lowe's quotes from Landry's deposition testimony as follows:

> Q. Okay. And I just want to know specifically for this area where this lumber was that fell on you, you actually saw some other Lowe's customers touching that lumber before you got to it right?
>
> A. Yes ma'am.

Record Document 19-1 at 2. However, Landry's full answer reads as follows:

> A. Yes ma'am. I didn't - - I mean, like I said, I seen them. They - - *I don't know if they was at the two-by-four area* or, you know, but they were shopping and we had to wait till they moved in order to move our cart in order to get our lumber that we needed.

Record Document 19-3 at 9 (emphasis added). Lowe's additionally relies upon the following testimony of Landry:

> Q. All right. And when you guys were waiting to get lumber, were the other customers who were selecting lumber pulling from this shelf number, shelf number 2?
>
> A. Yes ma'am.

Record Document 19-1 at 2. However, when one looks to the portions of Landry's deposition submitted to the Court, Landry then states, "It was - - they was right up in this area. I don't know if it was coming from this shelf (indicating) or this shelf (indicating). I know they was getting from this stack here (indicating)." Record Document 19-3 at 11.

The Court has reviewed all deposition testimony supplied by the parties. The Court's review shows Landry testified that although there were other shoppers on the lumber aisle prior to the incident, those customers had walked away from the area about five minutes before the lumber fell. See Record Document 21-2 at 8-9. Robert Lewis could not recall whether other customers were in the area prior to the merchandise falling. Record Document 21-4 at 2. Johnny Louviere testified there were customers in the aisle prior to the fall, but he did not remember whether those customers were selecting wood from the same lumber which fell onto Landry. See Record Document 19-3 at 19. Mr. Louviere's testimony is unclear as to whether any customers were on the aisle at the time of the fall. See Record Document 19-3 at 21. Reading these facts in the light most favorable to Landry, while there were customers in the general area prior to the incident, those customers had moved on about five minutes before the lumber fell onto Landry. Accordingly, the Court finds Landry has shown there is an issue of material fact warranting trial with regard to whether another customer caused the lumber to fall.

**B. A Factual Issue Exists with Regard to Whether Defendant's Negligence Was the Cause of the Accident**

Lowe's contends Landry cannot satisfy the third element of his *prima facie* claim, arguing Landry "cannot present any evidence that Lowe's negligence caused the accident." Record Document 19 at 1. According to Lowe's, "The testimony of Landry and Louviere

establishes . . . that no Lowe's employee touched the lumber or otherwise caused the accident." Record Document 19-1 at 3. The only evidence Lowe's provides in support of this argument is the following deposition testimony of Mr. Louviere:

> Q. Okay. How long were you guys standing in that area where the wood fell, before it actually fell?
>
> A. Maybe a minute or two.
>
> Q. Okay. So were there any–were there any Lowe's employees with you when that happened?
>
> A. No.

Id. The Court finds the foregoing testimony merely shows no Lowe's employees were on the two-by-four aisle for the two to five minute period of time prior to the lumber falling. Such a statement of fact is insufficient to absolve Lowe's of negligence as a matter of law, as no evidence has been presented indicating how long the alleged hazardous condition existed, or when Lowe's employees last inspected the area. See Smith, 754 So.2d at 90 (merchant's duty includes placing merchandise safely on shelves, safely replacing merchandise that has been moved, and checking shelves periodically to ensure merchandise is in a safe position).

In his opposition, Landry contends there is an issue of material fact warranting trial, and points to Mr. Louviere's testimony that the lumber which fell onto Landry was improperly stacked. See Record Document 21 at 6-7 (citing Record Document 21-3 at 6-7). Specifically, Mr. Louviere testified as follows:

> Q Okay. When we were talking about the accident, one of the things that you said is that you said the lumber was stacked bad, where y'all

> were getting the lumber from.[2] Tell me a little bit more about that. What do you mean, the lumber was stacked bad?
>
> A    Well, look at this.
>
> Q    And you're referring to Exhibit C, the pictures of the lumber?
>
> A    Yes. If you look at it, the lumber, you know, is stacked like, but that particular time they had lumber, it was stacked all kinds of ways.
>
> Q    So the picture we're looking at, Exhibit C, is showing the lumber stacked up orderly and in pristine condition. But that's not what it looked like when y'all walked up and were standing there waiting to select lumber --
>
> . . . .
>
> A    No.

Record Document 21-3 at 6-7.

Lowe's responds, through its reply brief, that the lumber was only improperly stacked "immediately before the accident-- after the other customers handled the lumber." Record Document 35 at 2-3. This is an inference Lowe's has drawn from disputed facts. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Accordingly, the Court declines to draw the inference Lowe's advocates in its determination of the instant motion.

Lowe's additionally argues its actions did not cause the lumber to fall by pointing to the following testimony of Landry:

> Q.    Okay. Did the wood look like it was -- had any chance of falling before you walked up to it?

---

[2] The earlier referenced testimony (that "the lumber was stacked bad") has not been provided to the Court.

> A. No, ma'am. Like I said, I -- you know, when you busy trying to, you know.

Record Document 35 at 3. From this statement, Lowe's concludes Landry "testified that the lumber was stacked appropriately prior to the accident." Id. However, that is not the sole inference which can be drawn from the referenced testimony. A reasonable jury could interpret this testimony to mean Landry did not notice the manner in which the lumber was stacked prior to the accident because he was examining his shopping list at that time. Such a determination is entirely within the province of the jury. See Anderson, 477 U.S. at 255. Thus, the Court declines to grant summary judgment in Lowe's favor based upon the cited testimony.

Finally, Lowe's submits one page of the deposition testimony of Gregory Stutes, an Assistant Store Manager at Lowe's, which reads in pertinent part:

> Q Okay. From your knowledge of working at the store, how often are the -- in the lumber section, for example -- are the shelves inspected by employees?
>
> A Daily.
>
> Q And how frequently on a daily basis?
>
> A It's done in the mornings, but it's done throughout the day as they walking by.

Record Document 35-1 at 6. Lowe's argues this testimony proves "the lumber is inspected multiple times per day." Id. at 3-4. The Court disagrees. The single page of testimony submitted by Lowe's is silent as to whether Mr. Stutes was aware if the inspection procedure he discussed was executed on the day in question. Accordingly, the Court declines to grant summary judgment on the basis of this evidence.

In sum, the Court finds a factual dispute exists regarding whether Lowe's negligence

caused the lumber to fall. There is evidence in the record that the lumber was stacked improperly. There is evidence in the record that Landry was standing by the two-by-fours for two to five minutes before the lumber fell on him. While Lowe's has submitted evidence that employees are to inspect the shelves in the lumber section every morning and throughout the day, they have submitted no evidence that the shelves were inspected at any time on the day in question. Further, there is evidence in the record that Lowe's employees were "back and forth down the aisles" during the general time frame of the accident yet, viewing the facts and evidence in the light most favorable to Landry, the lumber fell onto him without any person touching it. Record Document 19-3 at 8-9. A merchant's duty to keep its premises free of hazardous conditions includes not only placing the merchandise safely on its shelves, but also checking shelves periodically to ensure merchandise is in a safe position and does not present an unsafe condition. See Smith, 754 So.2d at 215. A reasonable jury could find the lumber was improperly stacked at the time of the accident, that Lowe's had sufficient notice to remedy the hazard, but failed to do so prior to the lumber falling. Accordingly, Landry has presented evidence showing a genuine dispute of material fact exists with regard to whether the condition of the lumber presented an unreasonable risk of harm. See Whitt v. Wal-Mart Stores, Inc., 96-906 (La. App. 5 Cir. 3/12/97), 690 So.2d 1009, 1011-1112 ("The fact that the ladder fell without being touched by the plaintiff and without any customers in the area, however, establishes circumstantial evidence that the condition of the ladder presented an unreasonable risk of harm."), *cited with approval in* Smith, 754 So.2d at 213. Whether Landry ultimately persuades the factfinder on the issue of Lowe's negligence must await a trial.

**CONCLUSION**

For the reasons set forth above, the Court finds Landry has shown there are genuine disputes of material fact warranting trial. Accordingly, the Motion for Summary Judgment filed by Lowe's (Record Document 19) is **DENIED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 22nd day of November, 2017.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT